STATE OF NORTH CAROLINA v. JAMES LLOYD DAVIS, JR.

No. 8918SC90

(Filed 6 February 1990)

1. **Criminal Law § 187 (NCI4th)— narcotics—motion to suppress— time for filing**

The trial court did not err in a narcotics prosecution by denying defendant's motion to suppress or by admitting marijuana obtained by a search of his person where N.C.G.S. § 15A-976(b) states that if the State gives notice not later than twenty working days before trial of its intention to use the evidence, then defendant may move to suppress only if the motion is made not more than ten working days following receipt of the notice from the State; the State provided defendant with notice on 31 May 1988; defendant moved to suppress on 9 June 1988; defendant's motion was dismissed on 1 July 1988 without prejudice and defendant was granted leave to

refile in a form meeting procedural requirements; and defendant's second motion to suppress was filed on 9 September 1988, three days before his scheduled trial. The order granting leave to refile required conformity with procedural requirements, among which is a ten-day time limit.

**Am Jur 2d, Evidence § 426.**

2. **Criminal Law § 557 (NCI4th)— possession of narcotics— testimony regarding dealing—no mistrial**

The trial court in a narcotics prosecution involving possession did not err by denying defendant's motion for a mistrial following a detective's testimony that officers had moved to a certain location because an informant had stated that the suspect was selling narcotics. Any prejudice was cured by the trial judge's instruction to disregard that information.

**Am Jur 2d, Evidence § 748.**

3. **Criminal Law § 169.2 (NCI3d)— narcotics—charges relating to evidence dropped—admission harmless error**

There was no prejudicial error in a narcotics prosecution from the admission of evidence of the contents of a van where the charge involving that evidence was dismissed.

**Am Jur 2d, Evidence § 320.**

4. **Criminal Law § 42.1 (NCI3d)— narcotics—drugs found in wall— circumstantial connection to defendant—admissible**

There was no error in a narcotics prosecution from the admission of testimony regarding a bag of cocaine found in a crack in a service station wall after defendant had fled from officers where an officer testified that the bag was clean, had no dirt, trash, or leaves on top of it, and did not appear to have been in the crack for long. While the testimony was arguably inadmissible expert testimony under N.C.G.S. § 8C-1, Rule 701, the jury was free to conclude that the bag had not been in the crack for long based on its condition.

**Am Jur 2d, Evidence § 266.**

5. **Narcotics § 4 (NCI3d)— possession of cocaine—drugs found in wall—evidence sufficient**

The trial court did not err by denying defendant's motion for nonsuit of a charge of felonious possession of cocaine where

STATE v. DAVIS

[97 N.C. App. 259 (1990)]

a bag of cocaine was recovered from a crack in a wall; none of the detectives could testify as to how the cocaine got into the crack in the wall; and defendant was seen kneeling where the bag of cocaine was found.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 47.**

Judge BECTON concurring in part and dissenting in part.

APPEAL by defendant from judgment entered 14 September 1988 by *Judge William H. Helms* in GUILFORD County Superior Court. Heard in the Court of Appeals 31 August 1989.

Defendant, James Lloyd Davis, Jr. ("Davis"), was convicted of felonious possession of cocaine and misdemeanor possession of marijuana. From a judgment imposing an active prison sentence, defendant appeals. We find no error.

On 16 November 1987 a narcotics detective, Julian Miller Landers, relying on information from a confidential informant, drove to the vicinity of the Tops Service Station on East Market Street in Greensboro. He was accompanied by Detectives Tim Parrish and Dave Lombardo. At the intersection of Charlotte Street and Raleigh Street, Detective Landers saw the white van described by the informant and placed it under surveillance. The informant had also described an individual and the clothes he would be wearing, but Landers did not see that individual.

Approximately twenty to thirty minutes after the detectives arrived at the location, they received another call informing them that the individual previously described was standing at the phone booths in front of the Tops Service Station and was selling narcotics. The detectives then proceeded to the Tops Service Station where they saw an individual fitting the description provided by the informant. At trial, Detective Landers identified that individual as Davis.

Detectives Parrish, Lombardo, Landers and two other police officers, Detective Seabolt and Sergeant Caviness, who were also in the area, approached Davis. As the officers approached, Davis ran. Sergeant Caviness identified himself as a police officer and commanded Davis to stop. Davis changed the direction of his flight but later stopped for about fifteen to thirty seconds and knelt at the corner of an abandoned service station across the street from the Tops Service Station. Sergeant Caviness pointed his

pistol at Davis, and again commanded Davis to freeze. Davis ran behind the abandoned service station, where he was apprehended by Detectives Seabolt and Parrish.

After placing Davis under arrest, the officers conducted a search and found marijuana in Davis' pocket. Upon searching the area, Sergeant Caviness discovered a small plastic bag in a crack in the wall of the abandoned service station at or near the point where Davis had stopped and knelt. The bag was tied with a twist tie. None of the detectives could state how the bag got into the crack in the wall. The substance in the bag was subsequently identified as cocaine. Detective Landers searched the white van and found baking soda, twist ties, a measuring spoon, a broken glass vial, and a beer can inside. The State did not present evidence as to who owned or was in possession of the van.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Henry T. Rosser, for the State.*

*Assistant Public Defender Robert O'Hale for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first assigns error to the denial of his motion to suppress evidence obtained from the search of his person. We find no merit to this assignment of error. N.C.G.S. § 15A-976(b) states, "If the State gives notice not later than 20 working days before trial of its intention to use evidence. . . , the defendant may move to suppress the evidence only if its motion is made not later than 10 working days following receipt of the notice from the State." On 31 May 1988, the State provided the defendant with notice of its intent to introduce evidence obtained by search without a warrant of his person and vehicle. On 9 June 1988 defendant moved to suppress that evidence; however, his motion was dismissed on 1 July 1988 without prejudice and defendant was granted leave to refile it in a form meeting procedural requirements. Defendant's second motion to suppress the evidence was filed on 9 September 1988, three days before his scheduled 12 September 1988 trial.

Defendant contends that the order granting him leave to refile the motion to suppress did not include a time limitation and that the subsequently filed motion was properly before the court. That contention is unavailing. The order of 1 July 1988 specifically stated

that leave was granted to refile the motion "in a form which meets the procedural requirements of Article 53." Among those requirements is a ten-day time limit, and defendant should not be surprised to find that leave to refile the motion only extends his time another ten days and not until the eve of trial. N.C.G.S. § 15A-976. We therefore find no error in the dismissal of defendant's motion to suppress the evidence obtained from the search of his person.

Defendant also assigns error to the trial court's admission of the marijuana in evidence, contending that there was insufficient evidence for the court to determine if the officers had probable cause to arrest or search him. We find no error. The exclusive method of challenging the admissibility of evidence on the grounds specified in N.C.G.S. § 15A-974 is a motion to suppress which complies with the procedural requirements of Article 53. *State v. Holloway*, 311 N.C. 573, 319 S.E.2d 261 (1984); *State v. Conard*, 54 N.C. App. 243, 282 S.E.2d 501 (1981). The foregoing discussion addresses defendant's motion to suppress the evidence and will not be repeated herein except to note that twice his motion to suppress the evidence did not conform to the procedural requirements of Article 53, and he should not be heard to complain.

[2] Defendant next assigns error to the trial court's denial of his motion for a mistrial based upon Detective Landers' testimony that the reason the officers moved from the phone booth to the Tops Service Station was that the informant had stated that the "subject was selling narcotics." However, we agree with the State's contention that any prejudice to Davis was cured by the trial judge's instruction to the jury to disregard that information, and find no prejudicial error.

[3] Defendant also assigns error to the admission of evidence of the contents of the white van. Defendant contends that the contents of the van had no relevance to him and was so prejudicial in its effect as to deny him a fair trial.

Assuming, arguendo, that there was any prejudice in presenting evidence of the contents of the van, such prejudice was negated when the charge involving that evidence was dismissed.

[4] Defendant next assigns error to the admission of testimony by Detective Landers as to the length of time the bag had been

in the crack of the service station wall. This assignment of error is without merit.

At trial Detective Landers testified that the bag was clean; it had no dirt, trash or leaves on top of it; and it did not appear to have been in the crack for a long period of time. Defendant objected and moved to strike that testimony but was overruled. Arguably the testimony of Detective Landers is inadmissible expert testimony under N.C.G.S. § 8C-1, Rule 701. However, since the jury was free to conclude, based on the absence of dirt, trash or leaves, that the bag had not been in the crack an appreciable amount of time, we find that the error, if any, was harmless.

[5] Finally, defendant assigns error to the trial court's denial of his motion for nonsuit of the charge of felonious possession of cocaine. Defendant contends that there was insufficient evidence to support the charge. We disagree.

Upon a motion for judgment as of nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State and the State given the benefit of every reasonable inference arising therefrom. *State v. McNeil*, 280 N.C. 159, 185 S.E.2d 156 (1971); *State v. Vincent*, 278 N.C. 63, 178 S.E.2d 608 (1971).

In *State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967), the defendant was seen wearing a hat. He was later seen without the hat, and, upon his arrest, the hat was found in some tall grass. *Id.* Inside the hat were packets of marijuana. *Id.* Our Supreme Court held that the nonsuit motion should have been allowed and reversed the judgment of the trial court. *Id.* In the case at bar, although none of the detectives could testify as to how the cocaine got into the crack in the wall, Davis was seen kneeling where the bag of cocaine was found. This circumstantial evidence was sufficient to permit a jury to make whatever inferences and conclusions reasonable and to decide the guilt or innocence of the defendant. Therefore, nonsuit was properly denied.

Based on the foregoing analysis, we find no error in the trial below.

No error.

Judge COZORT concurs.

STATE v. DAVIS

[97 N.C. App. 259 (1990)]

Judge BECTON concurs in part and dissents in part.

Judge BECTON concurring in part and dissenting in part.

I concur in the majority's resolution of all issues in this case except the issue involving the trial judge's refusal to grant a mistrial when Detective Landers told the jury that an informant told him that the defendant was selling narcotics. Few activities deserve the uniform and national consternation that drug selling deserves. It naturally, and even rightfully, tugs at the heart strings of jurors. Indeed, some jurors may be swayed to convict by the mere suggestion that one deals in drugs. But the spectre of an alleged drug seller escaping punishment or being retried should not make courts waiver from their unflagging duty of ensuring every defendant a fair trial. In my view, testimony in this drug possession case that defendant was a drug seller was reversibly prejudicial and I dissent.

In *State v Aycoth* the defendant claimed prejudice on the grounds that a deputy sheriff testified that he knew that the defendant owned the automobile involved in the robbery case being tried because the defendant "at an earlier date said it was his car when [he was] arrested . . . on another charge . . . when he was indicted for murder." 270 N.C. 270, 272, 154 S.E.2d 59, 60 (1979). The trial judge in *Aycoth* gave a curative instruction, directing the jury to disregard the statements of the deputy sheriff. However, our Supreme Court found that ". . . the court's instruction did *not* remove from the minds of the jurors the prejudicial effect of the knowledge they had acquired from [the deputy sheriff's] testimony that Aycoth had been or was under indictment for murder." *Id.* at 273, 154 S.E.2d at 61.

"In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict." *State v. Strickland*, 229 N.C. 201, 207, 49 S.E.2d 469, 473 (1948). The statement in the case before us, like that in *Aycoth*, was of a nature such that the court's instruction did not remove from the minds of the jurors the "prejudicial effect of the knowledge they had acquired" from Landers' testimony that Davis was selling narcotics. Significantly, the jury knew that the informant's other statements had been proven to be true. Indeed, before uttering the challenged hearsay statement, Detective Landers

testified: "After I received the information, I responded to the area where the information was based on, [sic] and to verify that the information that I received was true and accurate information." The white van described by the informant was found where the informant said it would be. Baking soda, twist ties, a measuring spoon, and a broken glass vial, among other things, were found in the described van. The defendant, himself, fit the exact description given by the informant. Further, the defendant was found with another man exactly where the informant said they could be found. The knowledge that all the informant's previous statements were verified had its "probable influence upon the minds of the jury" and presented the "obvious difficulty [of] erasing it from [the] jury's mind." *Id.* Equally significant, the testimony of Detective Landers that he had been with the Greensboro Police Department for "almost seven years" and had been in the vice and narcotics division for "a little over two years" cast doubts on the possibility that the challenged statement — "the subject was selling narcotics" — was a "slip of the tongue" or the opinion of a recently-graduated officer. Indeed, the trial judge had just sustained objections to the two preceding questions, one of which solicited a hearsay response. Detective Landers had every reason to know that the hearsay testimony — that the defendant was selling narcotics — would be prejudicial in this narcotics possession case. I therefore believe the trial court erred by failing to grant Davis' motion for a mistrial.