McGEE, Chief Judge.
 

 *805
 
 Robert Morgan Smith ("Defendant") appeals from order of the trial court summarily denying his motion to suppress his medical records pursuant to a search warrant after he was charged with driving while impaired. Defendant contends the trial court erred in denying his motion to suppress as untimely under N.C. Gen.Stat. § 15A-971
 
 et seq.
 
 Defendant further argues the trial court erroneously admitted the medical records in violation of the physician-patient privilege, N.C. Gen.Stat. § 8-53, and certain health information disclosure provisions in N.C. Gen.Stat. § 90-21.20B. We find no error.
 

 I. Background
 

 Sergeant Karl Rabun ("Sgt. Rabun") of the Goldsboro Police Department responded to an early morning call on 5 September 2013 reporting a motorcycle crash at a traffic circle in downtown Goldsboro, North Carolina. Upon arriving at the scene, Sgt. Rabun found Defendant lying on the ground on the east side of the intersection, with one arm pinned beneath a "badly damaged" motorcycle. Sgt. Rabun recognized Defendant as a local attorney who had previously worked in Wayne County law enforcement. As Sgt. Rabun approached Defendant, he noticed "the strong odor of alcoholic beverage ... emanating from [Defendant's] breath as he was trying to speak and breathe." Defendant was "complaining of pain ... from obviously being involved in [an] impact." Sgt. Rabun directed Defendant to lie still until emergency medical responders arrived. Rescue personnel and additional law enforcement officers arrived and helped lift the motorcycle off Defendant.
 

 Officer Matthew Marino ("Officer Marino") of the Goldsboro Police Department assumed responsibility as lead investigator of the crash. Officer Marino immediately noticed the "very strong" odor of alcohol on Defendant's breath. He observed that the engine of Defendant's motorcycle was still hot. Defendant was transported by medical responders
 
 *806
 
 to the Emergency Room at Wayne Memorial Hospital ("the hospital"), where he was treated for injuries.
 

 Approximately forty-five minutes after Defendant arrived at the hospital, Officer Marino spoke with Defendant again. Officer Marino continued to detect a strong odor of alcohol on Defendant's breath and observed that Defendant had bloodshot eyes and slurred speech. Officer Marino formed the opinion that Defendant's faculties were "appreciably impaired" and that "it was more probable rather than not that [Defendant] [had been] driving under the influence of alcohol." After advising Defendant of his implied-consent rights, Officer Marino asked Defendant to submit to a blood test. Defendant refused a blood test, telling Officer Marino to "go get a warrant." Later that morning, Officer Marino charged Defendant with driving while impaired.
 

 Officer Marino applied for a search warrant on 9 September 2013 to obtain Defendant's medical records from Wayne Memorial Hospital related to the motorcycle crash, which was granted. Officer Marino received a total of twenty pages of medical records. Defendant's medical records noted that Defendant had an elevated blood alcohol level at the time of treatment on 5 September 2013. The State filed a notice of intent to use evidence on 6 March 2014, pursuant to N.C. Gen.Stat. § 15A-975(b), including "any ... oral, written, recorded, and otherwise memorialized statements of the defendant" and "[a]ny and all laboratory analyses provided to the Defendant."
 

 *875
 
 Defendant filed a motion to suppress his medical records on 22 August 2014, alleging that the search warrant had "illegally authorized the seizure of [Defendant's] hospital records pertaining to [his] ... medical treatment beginning 5 September 2013." In a memorandum of law filed with Defendant's motion to suppress, Defendant alleged that the search warrant violated North Carolina's physician-patient privilege, certain health information disclosure provisions in N.C. Gen.Stat. § 90-21.20B, and the federal Health Insurance Portability and Accountability Act (HIPAA). Defendant also alleged that the warrant was not supported by probable cause as required by N.C. Gen.Stat. § 15A-244.
 

 The State moved to summarily dismiss Defendant's motion to suppress, alleging that Defendant's motion was untimely and accompanied by an insufficient affidavit. Prior to trial, the trial court heard and summarily denied Defendant's motion to suppress, finding that Defendant's motion was untimely under N.C. Gen.Stat. § 15A-976, and that Defendant had not offered any newly discovered facts or extraordinary circumstances that would justify a late filing. In denying Defendant's
 
 *807
 
 motion to suppress, the trial court noted it "[did] not address the merits of [Defendant's] motion, and ... intentionally preserve[d] the right of the Defendant to raise any objections during the course of th[e] trial at the appropriate time."
 

 The trial court then heard pre-trial arguments regarding the admissibility of Defendant's medical records. After considering the text of N.C.G.S. § 90-21.20B, relevant HIPAA provisions, and case law cited by the State, the trial court held it would
 

 allow [Defendant's] records to be introduced for the limited purposes indicated; specifically to establish [Defendant's] blood alcohol level, and any statements made by ... Defendant concerning the motor vehicle accident. Again, this is all subject to the proper identifications and authentications of these [medical] records at the appropriate time [during trial].
 

 The State was instructed to redact "all remaining information" based on the trial court's conclusion that it would have no probative value and that such redaction was necessary to protect Defendant's privacy. Defendant's medical records were subsequently admitted into evidence and published to the jury. The jury found Defendant guilty on 27 August 2014 of driving while impaired. Defendant was sentenced to a level two impaired driving sentence of twelve months, suspended for a probationary term of twenty-four months. Defendant gave notice of appeal in open court.
 

 The State filed a motion to dismiss the appeal on 21 July 2015, based on Defendant's failure to timely serve the record on appeal. The motion was heard and allowed by Judge Arnold O. Jones, II on 10 September 2015. Defendant petitioned this Court on 15 September 2015 to issue a writ of certiorari to review the decision of the trial court. The petition for writ of certiorari was allowed on 1 October 2015. Defendant appeals the trial court order summarily denying his motion to suppress and the admission of his medical records into evidence.
 

 II. Standard of Review
 

 A trial court's conclusions of law in ruling on a motion to suppress evidence are reviewable
 
 de novo. See
 

 State v. Barnhill,
 

 166 N.C.App. 228
 
 , 230,
 
 601 S.E.2d 215
 
 , 217 (2004). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment" for that of the trial court.
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting
 
 In re Appeal of The Greens of Pine Glen Ltd.
 

 *808
 

 P'ship,
 

 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ). We review
 
 de novo
 
 the trial court's conclusion that Defendant's motion to suppress was untimely filed under N.C. Gen.Stat. § 15A-976.
 

 Defendant also argues that his medical records were improperly admitted because they were obtained in violation of the physician-patient privilege, N.C. Gen.Stat. § 8-53, as well as certain health information disclosure provisions in N.C. Gen.Stat. § 90-21.20B. "Resolution of issues involving statutory construction is ultimately a question of law for the courts. Where an appeal presents a question of statutory interpretation, full review is appropriate, and we review a trial court's conclusions of law
 
 de novo
 
 [.]"
 
 In
 

 *876
 

 re Hamilton,
 

 220 N.C.App. 350
 
 , 352,
 
 725 S.E.2d 393
 
 , 395 (2012) (citation omitted).
 

 III. Analysis
 

 A.
 
 Timeliness of Defendant's Motion to Suppress
 

 Defendant first argues the trial court erred by summarily dismissing his motion to suppress as untimely, pursuant to N.C. Gen.Stat. § 15A-976. Defendant contends that, because the motion to suppress was not based on any of the grounds specified in N.C. Gen.Stat. § 15A-974, it was not subject to the time constraints set forth in N.C.G.S. § 15A-976. Under § 15A-974, evidence must be suppressed if "(1) [i]ts exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or (2) [i]t [was] obtained as a result of a substantial violation of the provisions of this Chapter." N.C. Gen.Stat. §§ 15A-974(a)(1)-(2) (2015).
 
 See
 

 State v. Simpson,
 

 320 N.C. 313
 
 , 322,
 
 357 S.E.2d 332
 
 , 337 (1987) ("In determining whether [ N.C.G.S. § 15A-974(a)(2) ] requires suppression, the reviewing court must consider the importance of the interest violated, the extent of the deviation from lawful conduct and whether the violation was willful, as well as the extent to which suppression will deter future violations.");
 
 State v. Wilson,
 

 293 N.C. 47
 
 , 50,
 
 235 S.E.2d 219
 
 , 221 (1977) (" G.S.15A-974 [ (a) ](1) ... mandates the suppression of evidence
 
 only
 
 when the evidence sought to be suppressed is obtained in violation of defendant's constitutional rights." (emphasis in original)). Defendant explicitly cited the North Carolina and United States constitutions, as well as N.C.G.S. § 15A-971
 
 et seq.
 

 ,
 
 in support of his motion to suppress. As our Supreme Court has noted,
 

 [a] defendant who seeks to suppress evidence upon a ground specified in G.S. 15A-974 must comply with the procedural requirements outlined in G.S. 15A-971,
 
 et seq.
 
 Moreover, such defendant has the burden of establishing that his motion to suppress is timely and proper in form.
 

 *809
 

 State v. Satterfield,
 

 300 N.C. 621
 
 , 624-25,
 
 268 S.E.2d 510
 
 , 513-14 (1980) ((internal citation omitted)).
 

 N.C. Gen.Stat. § 15A-976(b) provides that
 

 [i]f the State gives notice not later than 20 working days before trial of its intention to use evidence and if the evidence is of a type listed in G.S. 15A-975(b), the defendant may move to suppress the evidence only if [the] motion is made not later than 10 working days following receipt of the notice from the State.
 

 N.C. Gen.Stat. § 15A-976(b) (2015). In turn, the "type[s] of evidence listed in G.S. § 975(b)" are
 

 (1) [e]vidence of a statement made by a defendant;
 

 (2) [e]vidence obtained by virtue of a search without a search warrant; or
 

 (3) [e]vidence obtained as a result of [a] search with a search warrant when the defendant was not present at the time of the execution of the search warrant.
 

 N.C. Gen.Stat. §§ 15A-975(b)(1)-(3) (2015). Defendant concedes that his medical records were obtained "with a search warrant when [he] was not present at the time of the execution of the search warrant." N.C.G.S. § 15A-975(b)(3). Accordingly, Defendant's motion to suppress fell squarely within the language of N.C.G.S. § 15A-975(b)(3), and thus was subject to N.C.G.S. § 15A-976(b).
 

 The State filed its notice of intent to use certain evidence
 
 [1]
 
 on 6 March 2014. Defendant filed his motion to suppress all evidence obtained by search warrant on 22 August 2014, a few business hours before his trial was scheduled to begin. As Defendant sought to suppress evidence obtained as a result of a search warrant executed outside his presence, and because Defendant failed to file the motion to suppress "not later than 10 working days following receipt of the notice from the State," N.C.G.S. § 15A-976(b) applies
 
 *877
 
 and his motion to suppress was
 
 *810
 
 untimely filed. The trial court acted within its "statutorily vested [authority] ... to deny summarily [a] motion to suppress when the defendant fails to comply with the procedural requirements of Article 53."
 
 State v. Holloway,
 

 311 N.C. 573
 
 , 578,
 
 319 S.E.2d 261
 
 , 264 (1984).
 
 [2]
 

 We note that even if a trial court erroneously summarily denies a motion to suppress, the defendant must show the error was prejudicial.
 
 See, e.g.,
 

 State v. Speight,
 

 166 N.C.App. 106
 
 , 115,
 
 602 S.E.2d 4
 
 , 11 (2004) (concluding that although the trial court erroneously denied defendant's motion to suppress for untimeliness, the error was not prejudicial);
 
 State v. Chance,
 

 130 N.C.App. 107
 
 , 112,
 
 502 S.E.2d 22
 
 , 25 (1998) (upholding trial court's erroneous denial of motion to suppress where defendant "failed to show a reasonable possibility that a different result would have been reached at trial had such error[ ] not been committed."). In this case, despite denying Defendant's motion to suppress on procedural grounds, the trial court stressed that it "[did] not address the merits of [the] motion" and "intentionally preserve[d] the right of the Defendant to raise any objections during the course of th[e] trial at the appropriate time." The trial court did, in fact, permit defense counsel to argue at length regarding the admissibility of Defendant's medical records, including discussion of the substantive statutory arguments raised in Defendant's motion to suppress. Even assuming
 
 arguendo
 
 that the trial court erroneously concluded Defendant's motion to suppress was untimely, Defendant has not shown "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial."
 
 See also
 
 N.C. Gen.Stat. § 15A-1443(a) (2015).
 

 B.
 
 Admissibility of Defendant's Medical Records
 

 Defendant also contends the trial court erred in admitting his medical records into evidence "without regard for" the physician-patient privilege set forth in N.C. Gen.Stat. § 8-53, and contrary to several health information disclosure provisions in N.C. Gen.Stat. § 90-21.20B. We disagree and address each in turn.
 

 (1)
 
 Physician-Patient Privilege
 

 Defendant maintains that, by the plain language of the physician-patient privilege statute, N.C. Gen.Stat. § 8-53, disclosure of a patient's medical records may be compelled only by judicial order after determination that such disclosure is "necessary to a proper administration of
 
 *811
 
 justice."
 
 See
 
 N.C. Gen.Stat. § 8-53 (2015). Defendant cites no authority, other than N.C.G.S. § 8-53 itself, to support his argument that this statute provides the exclusive means of obtaining patient medical records. The State asserts that another statute, N.C. Gen.Stat. § 90-21. 20B, allows law enforcement to obtain medical records through a search warrant for criminal investigative purposes. It notes that the latter explicitly permits the disclosure of certain protected patient health information to law enforcement "[n]otwithstanding G.S. 8-53 or any other provision of law...."
 
 See
 
 N.C. Gen.Stat. §§ 90-21.20B(a), (a1) (2015). According to the State, this demonstrates that N.C.G.S. § 8-53 is not the only statute under which patient medical records may be requested and released. We agree.
 

 (2)
 
 Disclosure pursuant to search warrant
 

 We next consider Defendant's argument that N.C.G.S. § 90-21.20B "[did not] permit[ ] the disclosure to law enforcement and use at trial of the medical records in this case." (Def. br. at 15) We disagree.
 

 N.C. Gen.Stat. § 90-21.20B provides in pertinent part:
 

 (a) Notwithstanding G.S. 8-53 or any other provision of law, a health care provider may disclose to a law enforcement officer protected health information only to the extent that the information may be disclosed under the federal Standards for Privacy
 
 *878
 
 of Individually Identifiable Health Information,
 
 45 C.F.R. § 164.512
 
 (f) and is not specifically prohibited from disclosure by other state or federal law.
 

 (a1) Notwithstanding any other provision of law, if a person is involved in a vehicle crash:
 

 (1) Any health care provider who is providing medical treatment to the person shall, upon request, disclose to any law enforcement officer investigating the crash the following information about the person: name, current location, and whether the person appears to be impaired by alcohol, drugs, or another substance.
 

 (2) Law enforcement officers shall be provided access to visit and interview the person upon request, except when the health care provider requests temporary privacy for medical reasons.
 

 *812
 
 (3) A health care provider shall disclose a certified copy of all identifiable health information related to that person as specified in a search warrant or an order issued by a judicial official.
 

 In interpreting N.C.G.S. § 90-21.20B, we look to the federal regulations referenced in N.C.G.S. § 90-21.20B(a), which govern disclosure of "protected health information for a law enforcement purpose[.]"
 
 See
 

 45 C.F.R. § 164.512
 
 (f) (2016). Those regulations define "protected health information" as "individually identifiable health information," which in turn is defined as:
 

 [I]nformation that is a subset of health information, including demographic information collected from an individual, and:
 

 (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
 

 (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
 

 (i) That identifies the individual; or
 

 (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.
 

 45 C.F.R. § 160.103
 
 (2016).
 
 [3]
 
 The regulations further provide that a health care provider may disclose protected health information (
 
 i.e.,
 
 "individually identifiable health information") for a law enforcement purpose to a law enforcement official "[i]n compliance with ... [a] court order or court-ordered warrant" as long as "(1) [t]he information sought is relevant and material to a legitimate law enforcement inquiry; (2) [t]he request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
 
 *813
 
 (3)[d]e-identified information
 
 [4]
 
 could not reasonably be used."
 
 45 C.F.R. § 164.512
 
 (f)(1)(ii) (2016).
 

 Defendant argues that "protected health information" obtainable by law enforcement under
 
 45 C.F.R. § 164.512
 
 (f) (and thus N.C.G.S. § 90-21.20B(a) ) is limited to "demographic information which identifies an individual or upon which there is a reasonable basis to believe that an individual may be identified," and that N.C.G.S. § 90-21.20B(a) does not permit law enforcement to obtain any further information. As an initial matter, we note that Defendant did not contend at trial that certain "demographic information" in his medical records
 
 was
 
 obtainable by search warrant; he contended that the records were improperly released because the information in the records was "not obtained
 
 *879
 
 for a law enforcement purpose or a law enforcement use."
 
 [5]
 

 Defendant overlooks the fact that "protected health information" (used synonymously with "individually identifiable health information"), as defined in
 
 45 C.F.R. § 160.103
 
 , "includ[es]," rather than is limited to, demographic information about an individual patient. Defendant also reads the phrase out of context: the regulations refer specifically to "demographic information
 
 collected from an individual
 
 " (emphasis added). In our view, this merely recognizes that "health information" encompasses information received directly from the patient, in addition to information created by the provider or received from some other source.
 

 By its plain language,
 
 45 C.F.R. § 164.512
 
 (f) permits disclosure of health information to law enforcement as required by search warrant, if certain conditions are met. Defendant has not alleged that the search warrant in this case sought information that was not "relevant and material to a legitimate law enforcement inquiry" or was insufficiently "specific and limited in scope," or that de-identified information could
 
 *814
 
 have reasonably been used instead.
 
 See
 

 45 C.F.R. § 164.512
 
 (f)(1)(ii) (2016). Accordingly, Defendant has not demonstrated that his medical records were obtained in violation of
 
 45 C.F.R. § 164.512
 
 (f) or N.C.G.S. § 90-21.20B(a).
 

 (3)
 
 Disclosures Related to a Vehicle Crash
 

 Finally, N.C. Gen.Stat. § 90-21.20B(a1)(1) specifically addresses disclosure of medical information about a person involved in a vehicle crash. It provides that
 

 [n]otwithstanding any other provision of law, ... [a]ny health care provider who is providing medical treatment to the person [involved in a vehicle crash] shall, upon request, disclose to any law enforcement officer investigating the crash the following information about the person: name, current location, and whether the person appears to be impaired by alcohol, drugs, or another substance.
 

 N.C. Gen.Stat. § 90-21.20B(a1)(1) (2015). Defendant argues that this "more narrow provision" permits law enforcement officers investigating a vehicle crash, with or without a search warrant, "to be provided information which informs them of the identity of an individual and whether that person appears to be impaired-nothing more." We disagree.
 

 In N.C.G.S. § 90-21.20B(a1)(1), the General Assembly authorized disclosure "upon request" to law enforcement of the three types of information listed, in the context of a vehicular accident. By contrast, N.C. Gen.Stat. § 90-21.20B(a1)(3) permits disclosure of "
 
 identifiable health information
 
 related to th[e] person [involved in the vehicle crash]
 
 as specified in a search warrant
 
 or other judicial order." N.C. Gen.Stat. § 90-21.20B(a1)(3) (2015) (emphases added). "The rules of statutory construction require presumptions that the legislature inserted every part of a provision for a purpose and that no part is redundant."
 
 Hall v. Simmons,
 

 329 N.C. 779
 
 , 784,
 
 407 S.E.2d 816
 
 , 818 (1991) (citing
 
 State v. Williams,
 

 286 N.C. 422
 
 , 432,
 
 212 S.E.2d 113
 
 , 120 (1975) ). This principle leads us to conclude that the information listed in N.C.G.S. § 90-21.20B(a1)(1) may be disclosed, without a warrant, at the request of law enforcement officials investigating a vehicle crash, while disclosure of additional "identifiable health information" in the same context is possible, but requires a search warrant or judicial order that "specifie[s]" the information sought. As discussed above, under federal law, "identifiable health information" includes information created by a health provider that "[r]elates to the past, present, or future physical or mental health or condition of an individual."
 
 45 C.F.R. § 160.103
 
 . Thus,
 
 *815
 
 we conclude that under N.C.G.S. § 90-21.20B(a1)(3), " identifiable health information" obtainable by search warrant is not strictly limited to an individual's
 
 *880
 
 name, current location, and perceived state of impairment.
 

 On appeal, Defendant argues his medical records were inadmissible based upon N.C.G.S. § 8-53 and N.C.G.S. § 90-21.20B only. He does not reassert the additional argument raised before the trial court in his motion to suppress, that the search warrant was not supported by sufficient probable cause in violation of N.C. Gen.Stat. § 15A-244, and we do not reach that issue. Defendant also does not allege the records were otherwise inadmissible due to some defect in evidentiary procedure.
 
 See, e.g.,
 

 State v. Drdak,
 

 330 N.C. 587
 
 , 592-93,
 
 411 S.E.2d 604
 
 , 607-08 (1992) (holding that the State was required to lay a proper foundation for the admission of blood alcohol test results not controlled by implied-consent statutory procedures). Because Defendant has not shown that his medical records were obtained in violation of either statute he cites, we find no error.
 

 NO ERROR.
 

 Judges STEPHENS and DAVIS concur.
 

 [1]
 

 The State's notice of intent identified two specific types of evidence potentially obtainable from Defendant's medical records: statements made by Defendant, and "[a]ny and all laboratory analyses provided to [ ] Defendant." Additional evidence listed in the notice of intent-"[a]ny and all photographs, physical evidence, and video tapes collected from the Defendant, the Defendant's home or vehicle, the crime scene, and any other location"-was unrelated to Defendant's medical records and is not at issue in this appeal.
 

 [2]
 

 The General Assembly has indicated that procedural requirements found in Article 53 are intended "to produce in as many cases as possible a summary granting or denial of the motion to suppress."
 
 See
 
 N.C. Gen.Stat. § 15A-977 official cmt. (2015).
 

 [3]
 

 "Protected health information" explicitly excludes four specific types of "individually identifiable health information," none of which are at issue in this case: (1) education records covered by the federal Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g ; (2) FERPA records described in 20 U.S.C. § 1232g(a)(4)(B)(iv) ; (3) employment records held by a covered entity in its role as employer; and (4) records "[r]egarding a person who has been deceased for more than 50 years."
 
 See
 

 45 C.F.R. § 160.103
 
 .
 

 [4]
 

 "De-identified information" is "[h]ealth information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual...."
 
 45 C.F.R. § 164.514
 
 (a) (2016). HIPAA permits covered entities (
 
 i.e.,
 
 health care providers) to disclose limited de-identified health information "for the purposes of research, public health, or health care operations."
 
 45 C.F.R. § 164.514
 
 (e)(3)(i) (2016).
 

 [5]
 

 Defendant argued instead that a different standard altogether,
 
 45 C.F.R. § 164.512
 
 (e), applied in this case. That provision governs disclosures of protected health information for judicial and administrative proceedings (as opposed to disclosures for law enforcement purposes,
 
 see
 

 45 C.F.R. § 164.512
 
 (f) ), and contains notice and hearing requirements. In his brief before this Court, Defendant does not refer to
 
 45 C.F.R. § 164.512
 
 (e).